MEYER & LANGE *et al. v.* UNITED STATES (No. 819).[1]

1. CRUSHED PRUNES HAVE NO COMMERCIAL DESIGNATION.

   The issue of a commercial designation is one of fact, the importer here having the burden of proof. The board found on a consideration of the evidence that crushed prunes were not shown to be commercially known as "jelly." This finding is correct.

2. CRUSHED PRUNES—FRUIT PRESERVED IN OWN JUICE.

   In the absence of a commercial designation, the merchandise falls aptly within the designation "fruit preserved in own juices" and dutiable as such under paragraph 263, tariff act of 1897, and paragraph 274, tariff act of 1909.

United States Court of Customs Appeals, May 17, 1912.

APPEAL from Board of United States General Appraisers, Abstract 27092 (T. D. 32006).

[Affirmed.]

*Comstock & Washburn (Albert H. Washburn* and *J. Stuart Tompkin* of counsel) for appellants.

*William L. Wemple,* Assistant Attorney General (*Leland N. Wood,* assistant attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case was imported in part under the tariff act of 1897 and in part under the act of 1909. The importations were severally returned by the appraiser and were assessed with duty as "fruit preserved in its own juice" under paragraph 263 of the act of 1897 and paragraph 274 of the act of 1909. The importers

---

[1] Reported in T. D. 32565 (22 Treas. Dec., 919).

duly filed their protest, claiming, among other things, that the merchandise was a kind of jelly and was dutiable under the provision for "jellies of all kinds" appearing in the paragraphs above mentioned. The protest was heard upon evidence by the Board of General Appraisers and was overruled. The importers now appeal to this court for a reversal of that decision.

The following is a copy of the two paragraphs above mentioned:

*Act of 1897.*

263. Comfits, sweetmeats, and fruits preserved in sugar, molasses, spirits, or in their own juices, not specially provided for in this act, one cent per pound and thirty-five per centum ad valorem; if containing over ten per centum of alcohol and not specially provided for in this act, thirty-five per centum ad valorem and in addition two dollars and fifty cents per proof gallon on the alcohol contained therein in excess of ten per centum; jellies of all kinds, thirty-five per centum ad valorem; pineapples preserved in their own juice, twenty-five per centum ad valorem.

*Act of 1909.*

274. Apples, peaches, quinces, cherries, plums, and pears, green or ripe, twenty-five cents per bushel; berries, edible, in their natural condition, one cent per quart; cranberries, twenty-five per centum ad valorem; all edible fruits, including berries, when dried, desiccated, evaporated, or prepared in any manner, not specially provided for in this section, two cents per pound; comfits, sweetmeats, and fruits of all kinds preserved or packed in sugar, or having sugar added thereto, or preserved or packed in molasses, spirits, or their own juices, if containing no alcohol, or containing not over ten per centum of alcohol, one cent per pound and thirty-five per centum ad valorem; if containing over ten per centum of alcohol and not specially provided for in this section, thirty-five per centum ad valorem and in addition two dollars and fifty cents per proof gallon on the alcohol contained therein in excess of ten per centum; jellies of all kinds, thirty-five per centum ad valorem; pineapples preserved in their own juice, not having sugar, spirits, or molasses added thereto, twenty-five per centum ad valorem.

The merchandise in question consists of prunes reduced to a pulpy consistency by boiling in water, without sugar, and passed through a sieve. It has the appearance of prunes which have been seeded and ground. It is eaten as a spread upon bread, and is used by bakers as a filling for pies and cakes.

It seems clear that the importation is not a jelly within the ordinary meaning of that word. In support of this statement the following authorities are cited:

Century Dictionary:

*Jelly.* 2. The thickened juice of fruits, or any gelatinous substance, prepared for food; as currant or guava jelly; calf's-foot jelly; meat jelly.

Standard Dictionary:

*Jelly.* 2. Specifically, in cookery, the juice of meat, bone, etc., or the sweetened juice of fruits, jellied by boiling and cooling; as calf's-foot jelly; currant jelly.

Stormonth's English Dictionary:

*Jelly.* The juice of meat or fruit which congeals on cooking  *  *  *  the strained liquid or juice of fruit after being boiled with sugar until it becomes a stiffened mass when cooled; the stiffened juice of boiled meat, sweetened and flavored, as calves'-feet jelly.

Bogle *v.* United States (1 Ct. Cust. Appls., 144–145; T. D. 31188):

HUNT, *Judge:* * * * The evidence shows that in the manufacture of marmalade the whole fruit is boiled, excepting the seed or fiber pulp that is contained around the juices or cells; that is eliminated. The flavor of marmalade is described as bitter-sweet. Marmalade is not a jelly, for the reason that a jelly is a preparation of the juice of fruit, thickened into a soft, stiff, homogeneous consistence, and usually semitransparent. That is to say, the marked difference between marmalade and jelly is that the one is made with the fruit itself boiled, while the other is made from the juice of the fruit.

It is not necessary to multiply authorities upon this subject, for it is clear that the merchandise in question lacks the distinguishing characteristics of jelly, using that word in its common acceptation. This substance is not made alone of the juice of the prune, but chiefly of the pulp; it has no sugar added in the making; it is not clear nor gelatinous.

The importers, however, contend that for many years next preceding the tariff acts above named this article was a well-known subject of commerce in this country, and had received a definite, uniform, and general trade designation as "prune jelly," and that it should for that reason be classified as jelly under those acts. The Government takes issue with this claim. Upon that issue substantial but conflicting testimony was submitted to the board by the respective parties. The importers produced eight witnesses, all of them importers who had handled this article for many years, who testified that the article had always been known in the commerce of this country as prune jelly. Some of these witnesses had not dealt in the merchandise commonly known as jellies; some of them testified upon cross-examination that the importation came within the ordinary meaning of the term jelly, as it was understood by them. None of them had manufactured the article or any such kind of article.

The importers also introduced in evidence copies of printed trade-price lists, having a general circulation, wherein this article is quoted as prune jelly. The Government in turn examined three witnesses. One of these had been engaged in the manufacture of this article and of similar products since 1884, sometimes making as much as 60,000 pounds per month of this substance. He testified that he sold the article under the name of legnar, or lecknor, and never as prune jelly, and that he had never "been asked to quote on prune jelly" to his knowledge. A second witness dealt in jellies and the like but had not known this article; he had not heard of it as prune jelly. The third witness manufactured and dealt in such merchandise, making an article identical with this except that his product contained sugar, whereas the article at bar has none. The witness testified that his product was sold under the name of prune jam and legnor.

The present appeal covers 41 importations of the article in question. The invoices of these importations variously name the article "prunes in sugar," "crushed prunes in own juice," "prune jelly," "preserved

prunes crushed in own juice," and "prunes in own juice." Of these diverse names that of "crushed prunes in own juice" seems to be most frequently used in the different invoices.

The foregoing presents the salient features of the testimony, and upon a consideration of it the board held that the importers had failed to establish a definite, uniform, and general commercial designation of the importation as jelly, or as prune jelly. And upon a review of the record this court concludes that the board's decision is sufficiently sustained by the evidence.

There are several reasons which lead to this conclusion. The usual or ordinary meaning of the word "jelly" is very clearly and commonly known, and the essential characteristics of jelly are so peculiar and so easily cognizable that it is improbable that the name should be generally applied in commerce to an article like the importation, lacking as it does the distinguishing characteristics of jelly. The fact also that a domestic manufacturer, producing sometimes as much as 60,000 pounds per month of the article in question, had never heard the article mentioned in his business under the name of prune jelly, but always as prune jam, or lecknor, strongly tends against the claim that the proposed commercial designation was definite, uniform, and general. The additional fact that the commercial invoices upon the respective importations of the merchandise show such a confusion of names, with the preponderance altogether against that proposed by the importers, is persuasive against that contention. In this behalf it is correctly argued by the importers that a commercial designation depends upon the usages of trade in this country and not abroad; nevertheless, the invoices reveal the names by which the importers received the merchandise in this country, which merchandise had been ordered by them from abroad, and it is reasonable to believe that such confusion would not appear if the alleged commercial designation in this country were as well established as the importers contend.

The issue of commercial designation is one of fact to be decided upon the evidence. The burden is upon the importers to sustain the affirmative of that issue. Upon a consideration of all the evidence the board held that this burden had not been discharged by the proof, and this court is led by the record to say that the decision of the board upon that issue is sufficiently sustained by the evidence.

In the absence of proof of a commercial designation the article at bar aptly falls within the classification of "fruit preserved in own juice." The boiling process to which the material was subjected is a preserving agency. No foreign ingredient was added to the prunes either as a flavoring or preserving element. The classification thus adopted by the collector is more apt than that for edible fruits, dried or preserved.

The decision of the board is therefore *affirmed.*