KELLER CO. ET AL. *v.* UNITED STATES (No. 2561)[1]

1. CLASSIFICATION BY USE MEANS CHIEF USE—RAGS—PAPER STOCK—WASTE.

   It has been frequently held by this court that, to entitle a commodity to classification by use, the test would be as to its *chief* use. So, to entitle rags to free entry under paragraph 1651, Tariff Act of 1922, as paper stock, it must appear that they are *chiefly* used in making paper; and they are dutiable as waste under paragraph 1457, since it appears that the major portion, while so used, is *chiefly* used for other purposes.

2. EVIDENCE—PRESUMPTION FAVORS COLLECTOR.

   The collector's classification of rags as paper stock under paragraph 1651, Tariff Act of 1922, raises a presumption that they are chiefly used for making paper.

[1] T. D. 41343.

United States Court of Customs Appeals, January 18, 1926

APPEAL from Board of United States General Appraisers, Abstract 48726

[Affirmed.]

Brooks & Brooks (*Frederick W. Brooks, jr.*, of counsel), for appellants.
*William W. Hoppin*, Assistant Attorney General (*John G. Lerch* and *Marcus Higginbotham*, special attorneys, of counsel), for the United States.

[Oral argument December 10, 1925, by Mr. Brooks, jr., and Mr. Lerch]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:
Paragraphs 1457 and 1651 of the Tariff Act of 1922 read as follows:

PAR. 1457.—Waste, not specially provided for, 10 per centum ad valorem.
PAR. 1651.—Rag pulp; paper stock, crude, of every description, including all grasses, fibers, rags, waste, including jute, hemp and flax waste, shavings, clippings, old paper, rope ends, waste rope, and waste bagging, and all other waste not specially provided for, including old gunny cloth, and old gunny bags, used chiefly for paper making, and no longer suitable for bags.

The collector assessed for duty, at 10 per centum ad valorem, under paragraph 1457, certain rags claimed to be free of duty, under paragraph 1651. The Board of General Appraisers affirmed the collector's assessment, and the importers appealed to this court.

It is the contention of appellants that they have proved that the merchandise involved is commercially known as "paper stock," as a trade term. It is also the importers' contention that the evidence in the case shows that the merchandise in controversy "is commonly, practically, commercially and actually used in the manufacture of paper, and, in fact, *is chiefly so used.*"

The appellants introduced six witnesses in their attempt to establish their contentions, three of them paper-stock manufacturers and three of them paper-stock dealers. The Government introduced two witnesses, buyers and sellers of merchandise similar to the importation, whose testimony is in direct conflict with the testimony of the importers' witnesses.

The burden of the importers' testimony is to the effect that the merchandise was sold to paper mills presumably for paper-making purposes, whereas the testimony of the Government's witnesses goes to the effect that the importation chiefly consists of wipers or wiping rags used for wiping oil from machinery, or for polishing, and that wiping rags are not sold and used as paper stock.

From the testimony of the witnesses on both sides, and from an observation of the samples, it seems indisputable that more than half of the goods imported consists of rags of the size and texture suitable for use as cleaning or polishing rags, and are known to the

trade as wipers; that there is a smaller percentage of small rags "tender rags," and irregular strips of cloth, which are not suitable for wipers and are sorted out and sold for other purposes, probably for paper making.  There is testimony in the record going to show, that, at times, the paper-making industry used rags, known as wipers, in the manufacture of paper, and that to them wipers are known as paper stock.

According to the evidence, wipers are pieces of cloth, parts of shirts, pillow slips, skirts, and various kinds of garments and cloths of sufficient size and proper texture for wiping grease and oil, and for polishing various articles, and, as such, are probably twice as valuable as the kind of rags used for making paper and which do not make suitable wipers.

We find very little in the record tending to support the importers' contention that this particular merchandise was known to Congress as "paper stock," in the trade or commercial sense, prior to and on September 22, 1922.  The board found against importers, on the commercial designation, evidence which is admittedly contradictory and conflicting.  We can not say that its finding is against the weight of the evidence, nor can we say that there is no substantial evidence to support the finding.  As was said in *United States* v. *Borgfeldt*, 1 Ct. Cust. Appls. 255:

> From the discussion of the testimony in the briefs and from the record it is clear that there was considerable conflict in the evidence upon this point, and we are unwilling to say that this finding of the board is either without substantial evidence to support it or that it is clearly contrary to the weight of evidence, one of which conditions should obtain to warrant a reversal of the finding.  On the other hand, without going into a discussion thereof, we think the finding is sustained by a fair balance of the evidence, having in mind that the presumption is in favor of the collector's action.

As to whether or not the evidence shows a commercial definition of the term "paper stock," which was definite, uniform, and general, attention is called to *Downing* v. *United States*, 1 Ct. Cust. Appls. 500, in which the following expression appears:

> As has been stated, each party called a large number of expert witnesses concerning the trade meaning of the words "fancy soap."  The very fact that there is such hopeless confusion and irreconcilable difference between them argues against the existence of a commercial definition which was definite, uniform, and general.

The Board of General Appraisers having affirmatively found, upon the conflicting testimony, against the importers on their contention for a commercial definition, we will not disturb its finding in this regard.  *Meyer & Lange et al.* v. *United States*, 3 Ct. Cust. Appls. 247.

We think the evidence fairly shows that the major portion of the importation is used for two purposes, for paper stock and for wiping and polishing. While the importers contend that they have shown that the chief use of the importation is as paper stock, they urge that it was not necessary for them to do so, and that it was only essential for them to show that it was commonly, practically, commercially, or actually used for the manufacture of paper in order to bring it within the free-list provision of paragraph 1651. With this contention we can not agree. Classification as paper stock, under paragraph 1651, is a classification by use. It has been frequently held by this court that, to entitle a commodity to a classification by use, the test would be as to its chief use.

The finding of the collector, in the case at bar, is as follows:

The merchandise is invoiced as old rags for paper making, and being in condition, of a size and texture suitable for use after cleaning and manipulation as cloths for cleaning and polishing, were accordingly held dutiable at 10% adv., par. 1457, act of 1922, following T. D. 39959.

Special report of appraiser attached.   *   *   *

The appraiser's special report is as follows:

The merchandise in question is described on the invoice as old rags for paper making and consists of large pieces of rags commercially known and commonly bought and sold as wipers or wiping rags for wiping machinery, etc.   *   *   *

We think the assessment, by the collector, of the merchandise under paragraph 1457 as waste not specially provided for, in preference to paragraph 1651, carried with it the presumption that the merchandise was not chiefly used in the manufacture of paper, but that it was chiefly used for purposes other than as paper stock. In order for the importers to overcome this presumption, their evidence must show that the merchandise was chiefly used as paper stock. The board's finding is, presumably, to the effect that the importers had failed in this regard, and we can not say its finding is not properly supported by the evidence.

We think Congress, in placing certain wastes otherwise dutiable on the free list, intended by the use of the words "paper stock" to include only such rags, waste, etc., as were *chiefly* used for paper stock. We think this view is abundantly supported by the following authorities: *Vandiver* v. *United States,* 1 Ct. Cust. Appls. 194; *United States* v. *MacNaughton,* 5 Ct. Cust. Appls. 114; *United States* v. *Hempstead & Son,* 3 Ct. Cust. Appls. 436; *Magone* v. *Wiederer,* 159 U. S. 555.

The judgment of the Board of General Appraisers is *affirmed.*