**No. 62111.**—L. D. Peters & Sons *v.* United States, protests 294681–K, 294682–K, 294683–K, and 294684–K (New York).

WILSON, Judge:   It has been stipulated between the parties in these cases that the merchandise under consideration consists of material known as magnesium sulfate, having the chemical formula $MgSO_4.3H_2O$ (3 molecules of water); that magnesium sulfates having from 0 to 7 molecules of water are known as magnesium sulfates, the substance containing 7 water molecules being material known more specifically as Epsom salts.   It is further established by uncontroverted testimony that the importation consisted of 52 long tons of the $3H_2O$ magnesium sulfate, packed in bags containing 112 pounds each, all of which material was sold by the plaintiff to Doggett-Pfeil Co., a corporation whose business is the manufacture of fertilizers, insecticides, and chemicals for horticulture.   It further appears from the undisputed evidence that all of the material in question was used in the manufacture of a liquid fertilizer.

Ernest S. Peters, a partner in L. D. Peters & Sons, the plaintiff, testified that the importer sold all of the magnesium sulfate imported by it in 1954 and 1955 to Doggett-Pfeil Co., its only customer for the product, and that it sold no other grade of magnesium sulfate to that purchaser, except the 3 water molecule type represented by the importation.   He further stated that the merchandise under consideration was not of United States Pharmacopœia quality and that the imported substance could not be sold to any other chemical companies because it was of fertilizer grade.   The witness also testified that the English manufacturer, from whom the importation was purchased, made three grades of 3 water molecule

magnesium sulfate: (1) B. P. (British Pharmacopœia) equivalent to United States Pharmacopœia grade; (2) veterinary grade; and (3) fertilizer grade; and that the plaintiff purchased only fertilizer grade, which it sold exclusively for use in the manufacture of fertilizers to Doggett-Pfeil Co.

Sidney Doggett, president of Doggett-Pfeil Co., after testifying as to the nature of his corporation's business and as to the purchase and use of the involved merchandise, further stated that he knew of no other use for $MgSO_4.3H_2O$ of a grade such as the 52 tons his company purchased from the plaintiff, except for the manufacture of fertilizers. This witness also testified that his company could not find any substantial quantities of the product in the United States and found none comparable to the imported product under consideration for solubility of the impurities contained therein. He stated that it was necessary to have a product, all of which was highly soluble, so that the sprays and pumps used in scattering the material would not become clogged.

Dr. Douglas Calsetta, who was in charge of products development and research work for the Doggett-Pfeil Co., testified that magnesium sulfate such as that contained in the imported product was essential to the maintenance of plantlife. He further stated that, in the years 1954 and 1955, when the merchandise under review was imported, he knew of no other uses of magnesium sulfate having 3 molecules of water, such as the grade before the court, except in the making of fertilizers.

The defendant called as its only witness one B. T. Palermo, a pharmaceutical chemist in the employ of Merck & Co., Inc. This witness had been with Merck for 19 months and had previously spent 12 years with R. P. Scherer Co. of Detroit, a concern engaged in preparing pharmaceutical dosage forms, as assistant chief of the development laboratory. Mr. Palermo testified that he was familiar with a material having a chemical formula of $MgSO_4.3H_2O$; and that he had used it in testing and in the preparation of pharmaceutical dosage forms. He knew the material under the name of "Magnesium sulphate dried." This material, as he knew it, was used by Scherer primarily as an ingredient in vitamin-mineral formulas. He stated that Epsom salts, having a chemical formula of $MgSO_4.7H_2O$, differs from magnesium sulfate, having the chemical formula $MgSO_4.3H_2O$ in the magnesium and water content. Mr. Palermo admitted, on cross-examination, that he had never seen or tested any of the material imported by the Peters company. He admitted that $MgSO_4.3H_2O$, as he knew it, would not comply with U. S. P. standards. The witness further admitted that he had no knowledge of the quantity of magnesium sulfate used by the companies that had employed him.

The importation was classified under paragraph 5 of the Tariff Act of 1930, as modified, as a chemical compound, not specially provided for, and assessed with duty at 12½ per centum ad valorem. Plaintiff's primary claim is that the merchandise should be classified as duty free under paragraph 1685 as a grade of a substance used chiefly for fertilizers, or chiefly as an ingredient in the manufacture of fertilizers, or, alternatively, under paragraph 49 of the Tariff Act of 1930, as modified, at three-eighths of 1 cent per pound as magnesium sulfate.

The Government contends that even though it be admitted that all of the material in question was used as an ingredient in the manufacture of fertilizers, that fact does not establish that the chief use of all such material is as an ingredient in the manufacture of fertilizer, and further contends that, to be classifiable under paragraph 49, the material must be Epsom salts having the chemical formula $MgSO_4.7H_2O$, since magnesium sulfate and Epsom salts, as used in paragraph 49, are synonymous.

The pertinent paragraphs involved read as follows:

Paragraph 5 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739:

All chemical elements, all chemical salts and compounds, all medicinal preparations and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for * * * _____ 12½% ad val.

Paragraph 1685 of the Tariff Act of 1930, as amended:

Guano; basic slag (* * *); manures; * * * when imported to be used in the manufacture of fertilizer; and (* * *) those grades of substances used chiefly for fertilizers, or chiefly as an ingredient in the manufacture of fertilizers.

Paragraph 49 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, supplemented by T. D. 52820:

Magnesium sulphate or Epsom salts_____ ⅜¢ per lb.

The first issue for determination is whether the magnesium sulfate now under consideration was, when imported in 1954 and 1955, a grade of magnesium sulfate used chiefly as an ingredient in the manufacture of fertilizer. If so, it would then fall properly under paragraph 1685, notwithstanding the provisions for magnesium sulfate in paragraph 49. In their briefs, counsel have given the count no assistance through the citation of cases but have argued facts about which there is no substantial controversy. The real problem is to determine which provisions of the tariff act are applicable to the undisputed facts.

It is, of course, a well-established principle of customs law, as stated in the case of *Mattoon & Co., Inc., (A/C Philip Senegram Co.)* v. *United States*, 42 C. C. P. A. (Customs) 19, C. A. D. 563, that the importer "has the dual obligation of overcoming the presumption of correctness attaching to the collector's classification and of affirmatively proving its own claim." See also *United States* v. *G. Klein & Son*, 42 C. C. P. A. (Customs) 73, 76, C. A. D. 574.

In the case of *Keller Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 428, T. D. 41343, certain rags were classified under paragraph 1457 of the Tariff Act of 1922 as waste, not specially provided for, and were claimed free of duty under paragraph 1651 of the same act as rags, used chiefly for paper manufacture. The court held that the collector's classification under paragraph 1457 of the Tariff Act of 1922—

* * * carried with it the presumption that the merchandise was not chiefly used in the manufacture of paper, but that it was chiefly used for purposes other than as paper stock. In order for the importers to overcome this presumption, their evidence must show that the merchandise was chiefly used as paper stock. The board's finding is, presumably, to the effect that the importers had failed in this regard, and we can not say its finding is not properly supported by the evidence.

The case of *United States* v. *Boker & Co.*, 6 Ct. Cust. Appls. 243, T. D. 35472, involved the classification of shears used in trimming ornamental hedges. The collector classified the merchandise as "shears," and the importer claimed it dutiable as agricultural implements. The court held that the use of the implement determines its classification and that the determinative fact in use is chief use. Numerous cases are cited listing the application of the principle to various types of importations.

When a commodity is classifiable according to its chief use, the established use of a particular importation is not controlling, where it appears that 90 per centum

of such merchandise is actually used for other purposes. *Brown & Co.* v. *United States*, 7 Ct. Cust. Appls. 309, T. D. 36871. See also *United States* v. *Spreckels Creameries, Inc.*, 17 C. C. P. A. (Customs) 400, T. D. 43835, and *United States* v. *C. J. Tower & Sons*, 26 C. C. P. A. (Customs) 1, T. D. 49534.

In considering chief use, the use of domestic goods must be considered and, where various grades of a product are involved, the use of each grade must be determined.

The case of *American Express Co. et al.* v. *United States*, 24 Treas. Dec. 447, T. D. 33290, involved the classification of certain flax waste under the Tariff Act of 1909. Paragraph 644 of that act provided for:

Paper stock, crude, of every description, including all grasses, fibers, rags (other than wool), waste * * * old paper * * * and all other waste not specially provided for in this section * * * used chiefly for paper making.

It appeared from the evidence in the case that at least two distinct kinds of flax waste were imported into the United States at that time, one grade being used in the manufacture of paper and the other in spinning and other industries. The involved merchandise was classified under paragraph 479 of the Tariff Act of 1909 as waste, not specially provided for.

The court held:

* * * The onus was on the importer to show that the article is chiefly used for paper making. The chief or predominant use meant is that which in ordinary English is so called. This chief use is to be determined by the predominant use to which identical or similar articles are applied, either of domestic or foreign origin.

The court pointed out that, in two previous cases (*Oberle & Henry* v. *United States*, G. A. 7194 (T. D. 31447) and in *Wood* v. *United States*, G. A. 7186 (T. D. 31400)), the court had considered flax card waste and discussed the subject of chief use. "We held," said the court,

* * * that the character of the waste used by paper makers or for spinning purposes depends largely upon the character of the fiber, whether it is short or long and whether the article is clear of what is known as shives wood or straw fragments separated from the flax by breaking. The cheaper grades we found are sold to paper makers. * * * Some of the grades are used for upholstery purposes. It is quite difficult to determine the use to which articles of this sort are devoted. Congress evidently intended to divide flax waste into two classes— what was chiefly used for paper making and that which was chiefly used for other purposes.

The court held part of the waste to be properly classifiable as waste, used chiefly for paper making, and the remainder classifiable under paragraph 479 as waste, not specially provided for. Our appellate court has, therefore, construed the congressional intent to be that there may be two or more grades of similar merchandise separately classifiable in a tariff sense.

In the case of *Amtorg Trading Corp. et al.* v. *United States*, 63 Treas. Dec. 241, T. D. 46161, certain leather scraps were classified under paragraph 1555 of the Tariff Act of 1930 as waste, not specially provided for, and were claimed free of duty under paragraph 1685 of the same act as a grade of a substance "used chiefly as an ingredient in the manufacture of fertilizer." The United States Customs Court sustained the protest and held the merchandise properly classifiable under paragraph 1685 as a substance used chiefly as an ingredient in the manufacture of fertilizers, it appearing from the testimony that no other use was shown for the commodity at or immediately prior to the date of importation, except as an ingredient in making fertilizer.

The case of *Tupman Thurlow Co. (Inc.)* v. *United States*, 59 Treas. Dec. 1418, T. D. 44982, involved a material known as ground tankage, manufactured from blood and bone, and containing a certain amount of ammonia.

The court held that the record indicated that the merchandise involved was not suitable for feed:

* * * because of its odor, its color, its dustiness, and its manner of preparation. Tankage which, by its physical characteristics, is precluded from use for purposes of feeding, can not be held to belong to that class of tankage which is used for feeding purposes even though it does contain the percentage of ammonia present in that class of tankage. The tankage in question is blood and bone tankage and the testimony shows that such tankage is not used for feeding purposes; therefore it belongs to the particular class of tankage that is used for fertilizer.

In the case of *J. T. Steeb & Co. (Inc.)* v. *United States*, T. D. 43784, this court held that fish fertilizer shown to be unfit for stock feed and used chiefly for fertilizer was entitled to free entry under paragraph 1583 as substances used chiefly for fertilizer.

The case of *S. Schapiro & Sons et al.* v. *United States*, 24 C. C. P. A. (Customs) 343, T. D. 48771, involved the classification of certain processed rags, which were held dutiable by the collector under paragraph 922 of the Tariff Act of 1930 providing for "Rags, including wiping rags, wholly or in chief value of cotton, except rags chiefly used in paper-making * * *." The merchandise was claimed duty free by the importer under paragraph 1750 of the same act, providing for rags, used chiefly for paper making. The appellate court refused to interfere with the finding of the United States Customs Court, to the effect that the evidence warranted that "all of the imported rags less than 144 square inches in area were free of duty as paper stock, and all of the other rags were dutiable as assessed by the collectors." The appellate court here again recognizes the fact that there are, for tariff purposes, frequently two or more grades of similar merchandise classifiable under different provisions of the tariff act.

The uncontroverted evidence, in the instant case, shows that three classes or grades of magnesium sulfate with 3 molecules of water were manufactured by the exporter, including a grade equivalent to U. S. P. standards, a so-called veterinary grade, and a fertilizer grade. The evidence further shows that the importation before us consisted of 52 long tons of magnesium sulfate ($3H_2O$) of the fertilizer grade, packed in bags containing 112 pounds each, upon which the manufacturer would not give a U. S. P. certificate, and that the only known use of the product in the United States was for the manufacture of fertilizers. It is true that the Government witness, Mr. Palermo, testified that he had used magnesium sulfate with 3 molecules of water, known to him as "Magnesium sulphate dried," in tests and in the preparation of certain dosage forms for recommendation to manufacturers of vitamins and other products. The witness, however, could give no information whatever as to the quantity of magnesium sulfate of any kind used by his employers. Furthermore, he admitted that he knew nothing of the material imported and that $MgSO_4.3H_2O$, as he knew it, does not meet U. S. P. standards (R. 34). It is interesting to note, at this point, that the only material listed in the Pharmacopoeia during the years 1954 and 1955 as magnesium sulfate was "Epsom Salt," $MgSO_4.7H_2O$.

We find from the preponderance of evidence, in this case, that the imported merchandise consists of a substance which is used chiefly as an ingredient in the manufacture of fertilizers and, accordingly, hold that it is free of duty as such under the pertinent provision of paragraph 1685 of the Tariff Act of 1930, as claimed. The claim in these protests that the merchandise is free of duty under paragraph 1685, *supra*, as a substance used chiefly as an ingredient in the manu-

facture of fertilizers is sustained. In all other respects, all the claims are over-ruled. Judgment will be entered accordingly.