(C.D. 2277)

Frazer & Hansen
H. B. Thomas & Co. et al.    } *v.* United States

United States Customs Court, First Division

(Decided July 17, 1961)

*Lawrence & Tuttle* (*George R. Tuttle, Jr., Edward N. Glad,* and *Barnes, Richardson & Colburn* of counsel) for the plaintiffs.
*William H. Orrick, Jr.,* Assistant Attorney General (*Richard E. FitzGibbon,* trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of these protests has been denominated by counsel for the parties as well as the witnesses who testified at the trial as "shutters." The shutters may be described as consisting of wooden frames approximately three-fourths of 1 to 1 inch thick and in sizes varying from 6 inches wide, by 20 inches long, to 16 inches wide and 80 inches long. In the center of each frame, there are wooden louvers or slats which, in some cases, are movable and, in others, are not, and, in some cases, particularly in the longer lengths, there is what has been called a "center divider rail" which separates one set of louvers or slats from another.

The collector of customs took duty on all of the shutters at the rate of 40 per centum ad valorem under the provision in paragraph 411 of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877, for "window blinds * * * wholly or in chief value of * * * wood, * * * not specially provided for." They are claimed to be dutiable at only 16⅔ per centum ad valorem under the provision in paragraph 412 of the same act, as modified by T.D. 52373 and T.D. 52476, for manufactures of wood, not specially provided for.

There is no dispute as to the facts. It was established by the evidence offered at the trial that the articles are used in a great many ways, and that when their use has been decided upon they are, if not already of the proper size, cut or joined together to fit the place where they are to be used, and, in most cases, hardware, such as hinges, tracks, knobs, and/or latches must be attached to them, and the articles also sanded and painted or stained.

Generally speaking, the use of any or all of them (after being treated as above described) is to cover any opening in a house where the result sought is to be able, when desired, to close off the opening, and/or to secure ventilation, light control, and/or a decorative effect.

Consequently, they are used in window and skylight openings, room or closet doorways, and built-in or movable furniture door openings. There is also evidence that they are used as room dividers or partitions and as purely decorative treatment of window or doorway openings.

The evidence indicates that no single use or class of uses preponderates over the others and that any or all of the imported shutters may be, and are, used for any or all of the uses by being cut or by being joined together to fit the particular place where it is desired to be used.

The plaintiffs' position is that the articles at bar are not blinds but are materials from which window coverings or doors or partitions for rooms or furniture may be made, and that, in their imported condition, none of the shutters is dedicated to any of these uses or to any class of uses which would characterize them as blinds.

The defendant's position is that, by definition, a shutter is a form of blinds, and that, in providing for blinds composed in chief value of wood, Congress meant to include all such articles, regardless of the many uses for which they are adaptable.

The terms "blind" and "shutter," insofar as applicable to this issue, are defined in Webster's New International Dictionary, 1930 edition, and in Funk & Wagnalls New Standard Dictionary, 1930 edition, as follows:

[Webster's]:

blind, *n.* 1. Something to hinder sight or keep out light; a screen; a cover; specif.: a A screen for a window, either, as commonly in the United States, a hinged shutter, or, as commonly in England, a flexible shade mounted on a roller. Cf. Venetian blind. * * *

[Funk & Wagnalls]:

blind, *n.* 1. Something that obstructs vision or the passage of light: (1) A screen or shutter of slats, cloth, or other material placed before a window to exclude light or prevent observation from outside; a shade. * * *

[Webster's]:

shutter, *n.* * * * A movable cover or screen for a window, to shut out the light, obstruct the view, or be a defense; a blind. * * *

[Funk & Wagnalls]:

shutter, *n.* * * * 2. That which shuts out or excludes; specif., a cover, usually hinged, for closing an opening. (1) A frame with blinds or panels, a cover made of boards and battens, or a blind of iron slats, for closing a window-opening. A *shutter* is usually solid, while a *blind* is made with slats, movable or fixed. * * *

While it appears from the foregoing that the words "shutter" and "blind" are defined in terms which refer to each other, we do not believe that it necessarily follows that all shutters are blinds. It would appear that the only shutters which may be considered to be blinds are those used in connection with window openings. The particular tariff

designation under consideration is "window blinds," and this implies that the use of an imported article determines its classification thereunder. In other words, it is a designation by use, and, in such cases, it is well settled that it is the chief use of the article which controls its classification. *Magone* v. *Wiederer*, 159 U.S. 555, 40 L. ed. 258.

It is likewise well settled that when an article is classified by the collector under a use provision, the presumption of correctness attaching to his decision includes the presumption that he found the article to be chiefly so used. *Keller Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 428, T.D. 41343. So, here, it must be presumed that the collector found as a fact that the articles at bar are chiefly used as window blinds.

Such presumptions, of course, are rebuttable, and we are satisfied that the evidence offered in the case at bar successfully rebutted the presumptions favoring the classification and established that the articles at bar are not chiefly used as window blinds.

The record shows that, in their imported condition, the articles at bar are not dedicated to use as window shutters or blinds, but are equally adapted to and used for a variety of other and different purposes.

It is true that they have, in some degree, the form, shape, and construction of articles which may be used for window blinds. They are a wooden frame into which louvers or slats are fitted. We do not think, however, that this is such a distinguishing characteristic as necessarily brands them, for classification purposes, as dedicated to the use of window blinds. In the determination of the chief use of articles for classification purposes, the size, form, shape, or construction will not control classification in the face of clear evidence of chief use otherwise than that conventionally attached to articles of such size, form, shape, and construction. *United States* v. *Quon Quon Company*, 46 C.C.P.A. (Customs) 70, C.A.D. 699; *United States* v. *The Baltimore & Ohio R.R. Co. a/c United China & Glass Company*, 47 C.C.P.A. (Customs) 1, C.A.D. 719. In the *Quon Quon* case, articles having the form, shape, and construction of baskets were held not to be such where the evidence showed they were used as table tops, and, in the *Baltimore & Ohio R.R. Co.* case, articles having the size, form, and shape of after-dinner cups and saucers were held not to be tableware upon a showing that they were chiefly used as novelty articles and not on tables.

We think the factual and legal situation in the case at bar is analogous to that which obtained in the case of *Magone* v. *Wiederer*, *supra*. In that case, the merchandise consisted of pieces of glass, square, oblong, or round, with ground or beveled edges. The collector of customs took duty upon them under a tariff provision covering

articles of glass generally, and the importer claimed them to be properly dutiable as "parts of clocks."

The suit filed by the importer for the recovery of the difference in duties came on to be heard before the then Circuit Court of the United States for the Southern District of New York, and the judge presiding charged the jury as follows:

In determining this question, whether or not these articles are parts of clocks, it will not be necessary for you to say that they were exclusively used for that purpose. An article may be chiefly used for a certain purpose and be diverted from its principal use; somebody may put it to a purpose for which it was not originally intended. That could not, in my judgment, change its tariff nomenclature. The Supreme Court, in a case which I think is somewhat similar upon the facts, although relating to different sections of the statute, sustained a charge to the jury "that the use to which the articles were chiefly adapted and for which they were used determined their character within the meaning of the statute * * *." And so I will say to you, as the law of the case, as I understand it, that if you find that these articles were chiefly used as parts of clocks, that that would determine their tariff classification. But it is entirely clear, upon the other hand, that they must be chiefly and principally used for that purpose. If they are articles, all, or one or more, as the case may be, which have no distinguishing characteristics, *which are just as applicable for use in fancy boxes or in coach lamps as they are for clocks, just as applicable to the one use as to the other*, then it would be entirely proper to say that they have no distinguishing characteristics as parts of clocks. *They might be used for one purpose just as well as for another. And if you find as to those articles, or any of them, that they have several uses to which they are perfectly applicable*, then as to those articles your verdict should be for the defendant. [Italics added.]

Exception was taken to the charge by counsel for the defendant, but, on appeal, it was approved by the Supreme Court, Mr. Justice White, speaking for the Court, saying:

* * * The charge given by the court below, and which was excepted to, was manifestly correct, for in giving the rule of chief use the principles by which chief use was to be ascertained were fully stated exactly in accordance with the law subsequently announced by this court in *Magone* v. *Heller* [150 U.S. 70, 37 L. ed. 1001].

On the record in the case at bar and upon the foregoing authority, judgment will issue sustaining the claim made in each of the protests accordingly.