(C.D. 2497)

FRANKLIN B. HOWLAND
CHARLES D. WALKER CO. ET AL. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 14, 1964)

*Lawrence & Tuttle* (*Edward N. Glad* and *George R. Tuttle* of counsel) ; *Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel), associate counsel; for the plaintiffs.

*John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff, Harold L. Grossman, Morris Braverman*, and *James F. O'Hara*, trial attorneys), for the defendant.

*Lamb & Lerch* (*David A. Golden* of counsel) as *amicus curiae.*

Before OLIVER and WILSON, Judges

OLIVER, Chief Judge: These two protests involve certain wooden shutters, which were assessed with duty at the rate of 40 per centum ad valorem under the provision in paragraph 411 of the Tariff Act of 1930, as modified by T.D. 53865, supplemented by T.D. 53877, for window blinds, wholly or in chief value of wood, not specially provided for. Plaintiffs claim that the merchandise is properly dutiable at only 16⅔ per centum ad valorem under paragraph 412 of the Tariff Act of 1930, as modified by T.D. 52373 and T.D. 52476, as manufactures of wood, not specially provided for.

At the time of trial, counsel for the respective parties stipulated that wooden shutters which have fixed louvers, "no matter what their length may be," and wooden shutters, "80 inches in length or height and over," whether they have movable or fixed louvers, are not chiefly used as window blinds. The agreed facts are sufficient to remove the types or kinds of wooden shutters, identified in the agreed set of facts and which are included in the shipments under consideration, from the provision for window blinds in paragraph 411, as modified, *supra*, invoked herein by the collector, and relegate such articles for classification under the residuary provision for manufactures of wood, not specially provided for, in paragraph 412, as modified, *supra*, and dutiable thereunder at the rate of 16⅔ per centum ad valorem, as claimed by plaintiffs, and we so hold.

The effect of this conclusion, based, as it is, on the stipulation be-, tween the parties, is to limit the present discussion to a determination whether wooden shutters "which have (a) movable louvers, and (b) are of a length of less than 80 inches," (R. 11) are window blinds, within the purview of said modified paragraph 411. If they are, then the collector's classification must be sustained; otherwise, they are properly classifiable under said modified paragraph 412, as manufactures of wood, not specially provided for, as claimed.

Disposition of the present issue is controlled by the principle of chief use. As we held in *Frazer & Hansen et al.* v. *United States*, 47 Cust. Ct. 40, C.D. 2277, the tariff designation for "window blinds" is a designation by use, and it is the chief use of an imported article which controls its classification thereunder. "Chief use" of a commodity for tariff purposes means the principal or predominant use, and does not contemplate exclusive use. *United States* v. *Wm. Cooper & Nephews, Inc.*, 22 CCPA 31, T.D. 47038. Mere susceptibility of use, or an exceptional, incidental, or unusual use, are not important considera-

tions in finding chief use of an article for tariff purposes, *United States* v. *The Baltimore & Ohio R.R. Co. et al.*, 47 CCPA 1, C.A.D. 719. It is the usual and common use of an article that is the test for tariff classification under the principle of chief use; the *Cooper & Nephews* case, *supra*. With these established tariff principles in view, we turn to a consideration of the proofs that are before us.

Plaintiffs' direct case in this proceeding is the record in the *Frazer & Hansen* case, *supra*, which record was incorporated herein on motion by plaintiffs and without objection from defendant. The merchandise involved therein was described by the court as follows:

* * * The shutters may be described as consisting of wooden frames approximately three-fourths of 1 to 1 inch thick and in sizes varying from 6 inches wide, by 20 inches long, to 16 inches wide and 80 inches long. In the center of each frame, there are wooden louvers or slats which, in some cases, are movable and, in others, are not, and, in some cases, particularly in the longer lengths, there is what has been called a 'center divider rail' which separates one set of louvers or slats from another.

In the cited case, as in the present one, the merchandise was classified under the provision for window blinds and claimed to be dutiable as manufactures of wood, not specially provided for.

In approaching an analysis of the incorporated record, it should be noted that the merchandise involved therein consisted of wooden shutters of different sizes and of various forms or designs, some of which were within the classes of shutters, which, as stipulated herein, are concededly not classifiable as window blinds under said modified paragraph 411. Other items involved in the cited case were wooden shutters, like those in controversy in this case, which, as agreed by the parties, are "stock size, interior, wooden, movable louver shutters the same in all material respects other than to size and possibly the type of wood as Plaintiffs' Exhibits 1, 2, 3, and 7 received in evidence in the case decided in C.D. 2277 [the *Frazer & Hansen* case, supra]."

In the incorporated record, four witnesses testified. All appeared on behalf of plaintiffs. Defendant offered no evidence. Plaintiffs made no attempt to establish chief use of the merchandise. On the contrary, the testimony adduced therein was directed toward showing that the merchandise was used for a variety of purposes, and that none of the items were dedicated to the making of any particular article or class of articles. Summarizing plaintiffs' proof in the incorporated record, the court stated as follows:

The evidence indicates that no single use or class of uses preponderates over the others and that any or all of the imported shutters may be, and are, used for any or all of the uses by being cut or by being joined together to fit the particular place where it is desired to be used.

On the basis of plaintiffs' presentation of their case in the incorporated record, as reflected in the court's finding hereinabove quoted, the

incorporated record offers nothing toward showing chief use of the present merchandise.

In this case, however, defendant went forward and introduced the testimony of 17 witnesses, whose testimony was directed to the specific wooden shutters in question, as represented by plaintiffs' illustrative exhibits 1, 2, and 3, and plaintiffs' exhibit 7, in the incorporated record. Defendant's witnesses included manufacturers, sellers, distributors (wholesale and retail), and installers of wooden shutters, such as the items in question. Collectively, their commercial experience embraces the entire United States. Their combined evidence—oral testimony coupled with documentary evidence in the form of advertising matter and catalogs—is strongly convincing to the effect that the wooden shutters in question are chiefly used on window openings, particularly interior window openings, as window blinds, to control air, ventilation, and privacy. While there is some indication in defendant's testimony of the use of these shutters, other than as interior window openings, all other suggested uses are minor, or subordinate, to the chief, or principal, use as window blinds. Testimony of installers of these wooden shutters is uniform to the effect that the articles in question are stock items which, in their chief use as window blinds, are installed without anything being done to them, except to be hinged when installed on window openings, or nailed to the wall when placed across window openings.

Plaintiffs offered testimony of 6 witnesses in rebuttal. Their first witness was the home furnishings coordinator of Montgomery Ward and Co. of Chicago, who stated that her principal duties were advisory in connection with sales promotion of home furnishings, as decorative items, including shutters in window treatments. She has nothing to do with sales of shutters, but only helps to plan sales promotion programs of her employer's stores. The witness' testimony offers nothing toward showing chief use of the present merchandise.

Plaintiffs' second witness in rebuttal is the president of the Cruver Sales Co. of Tacoma, Wash., engaged in the importing and wholesaling of various wooden products, including shutters similar to those involved herein, which, he stated, are a recent innovation. His merchandise is sold on the west coast and in New York. Over a period of 6 years, during which period he imported approximately 200,000 shutters, similar to the present merchandise, he had seen only about 50 of them installed. Referring to the use of shutters, similar to the items under consideration, the witness stated that he observed them principally used as decorative items, on walls or as partitions in restaurants, hotels, and men's furnishings stores. Two employees of the Charles D. Walker Co., one of the plaintiffs herein, whose president testified in the incorporated record, also offered rebuttal testimony. The general manager and an installer of shutters, who works under

his supervision, also testified on the matter of use. Based on 2 years' experience with his employer, the general manager stated that, from his personal observation of the use of stock shutters, like the items in question, such articles are used for decorative purposes, that 50 per centum were used on windows and the remaining 50 per centum either as room dividers, pass-throughs, or on cabinets. The installer testified that 40 per centum of the shutters, that he installed, were in windows, that in such usage they controlled light, ventilation, and privacy, and that the remaining shutters he installed were on cabinets, as pass-throughs or room dividers, in hotels, restaurants, apartment houses, private homes, and business offices. The testimony of the three witnesses just reviewed falls far short of serving as a contradiction of defendant's testimony on the matter of chief use.

A carpenter and general contractor, whose business is confined to "the general area of Los Angeles," testified that over "the last four or five years" he had installed wooden shutters, like the articles in question, in homes, bars, beauty salons, cafes, and commercial buildings, and that such stock shutters were installed in window openings, doorways, pass-throughs, on cabinets, and as dressing screens. The distributing manager for a California firm that imports louvered shutters, door panels, bamboo fencing, and bamboo blinds, stated that, during his 3 years' service, he supervised the ordering, selling, and maintaining inventory of the products handled by his employer, which included wooden shutters like those in controversy. His sales of such shutters are principally to retail outlets. Based on 13 years' experience in the shutter business, which included imported and domestic items, as well as custom and stock articles, the witness stated that he had seen stock shutters placed in bars, beauty parlors, homes, hotels, restaurants, and on cabinets. The testimony of both witnesses was not directed toward showing a chief use for the present merchandise.

All of plaintiffs' witnesses in rebuttal testified that the stock shutters in question are not dedicated to an exclusive use, and that they can be used, and are susceptible of use, for different purposes. As heretofore set forth, the controlling factor in finding chief use of merchandise is the principal or predominant use. Where an imported commodity, whose tariff classification is controlled by a "use" provision, as we find herein, is shown to be actually used for more than one purpose, it is *the chief use* that fixes such classification. *National Sanitary Rag Co.* v. *United States*, 23 CCPA 200, T.D. 48051.

Witnesses for plaintiffs, contradicting defendant's testimony that the imported stock shutters under consideration are ready for installation, stated that articles, such as the items in question, must always be processed after importation to fit properly into a particular place. Plaintiffs' testimony along that line is that stock shutters, such as the present merchandise, have to be trimmed or planed, or sometimes cut,

then hinged or equipped with hardware, and finally painted or stained. Based on such testimony, plaintiffs contend that the present merchandise is mere material, that it has not been processed into finished articles, and that, therefore, it is not properly classifiable under a provision covering completed articles. To support the contention, a line of cases is cited that concerned the definite identity of imported merchandise. *United States* v. *Horni Signal Mfg. Co., Inc.*, 27 CCPA 316, C.A.D. 106; *Nyman & Schultz* v. *United States*, 14 Ct. Cust. Appls. 432, T.D. 42060; *United States* v. *Cartier (Inc.)*, 15 Ct. Cust. Appls. 334, T.D. 42493; *United States v. American Bead Co. et al.*, 9 Ct. Cust. Appls. 27, T.D. 37873; *Athenia Steel & Wire Co.* v. *United States*, 1 Ct. Cust. Appls. 494, T.D. 31528; *United States* v. *National Importing Co. (Inc.) et al.*, 12 Ct. Cust. Appls. 186, T.D. 40169; *United States* v. *Pacific Customs Brokerage Co.*, 31 CCPA 102, C.A.D. 256; *Coro, Inc.* v. *United States*, 41 CCPA 215, C.A.D. 554; *United States* v. *G. L. Ramsey et al.*, 42 CCPA 106, C.A.D. 580; *United Enterprises et al.* v. *United States*, 41 Cust. Ct. 73, C.D. 2023; *National Carloading Corp.* v. *United States*, 44 CCPA 77, C.A.D. 640; *Paramount Import Export Co. et al.* v. *United States*, 45 CCPA 82, C.A.D. 677. The *Athenia Steel & Wire Co.* case, *supra*, turned on a finding that the merchandise involved therein was not "flat wire rods," as provided in the statute (paragraph 136 of the Tariff Act of 1897), but consisted of flat rods, which "is the material out of which flat wire rods, as well as a great variety of other kinds of articles, are made." In all of the other cited cases, the issue related to tariff provisions covering either "parts" of an article, or "unfinished," "partly finished," or "partly manufactured" articles. The questions presented in all of the above cited cases, both factually and legally, were materially different from the issue now before us. Here, the stock shutters in question were classified under the provision for "window blinds," which appears in paragraph 411, as modified, *supra*, without any words of qualification or extension. Most important to this phase of the present discussion is that these wooden stock shutters, at the time of their importation, had been subjected to every manufacturing process necessary for their completion as window blinds and their chief use as such. None of the work, upon which plaintiffs base their argument, is a manufacturing process. Trimming, planing, or minor cutting of these shutters, to fit them properly in window openings, are corrective details, forming a perfect window blind. Fitting hinges and other items of hardware, only equip the shutters for their chief use as window blinds. Supplying such equipment is not a manufacturing process. Nor is painting or staining the shutters for preservation, and to impart an attractive appearance, a manufacturing operation. *Carr* v. *United States*, 11 Ct. Cust. Appls. 1, T.D. 38633.

There is some testimony offered by plaintiffs, indicating a distinction between the term "shutter" and the term "blind," and suggesting that the articles in question are not blinds. The point was discussed in our decision in the *Frazer & Hansen* case, *supra*, and we repeat now, with the same force and effect, what we stated in the said case:

The terms "blind" and "shutter," insofar as applicable to this issue, are defined in Webster's New International Dictionary, 1930 edition, and in Funk & Wagnalls New Standard Dictionary, 1930 edition, as follows:

[Webster's]:

blind, *n.* 1. Something to hinder sight or keep out light; a screen; a cover; specif.: a A screen for a window, either, as commonly in the United States, a hinged shutter, or, as commonly in England, a flexible shade mounted on a roller. Cf. VENETIAN BLIND. * * *

[Funk & Wagnalls]:

blind, *n.* 1. Something that obstructs vision or the passage of light: (1) A screen or shutter of slats, cloth, or other material placed before a window to exclude light or prevent observation from outside; a shade. * * *

[Webster's]:

shutter, *n.* * * * A movable cover or screen for a window, to shut out the light, obstruct the view, or be a defense; a blind. * * *

[Funk & Wagnalls]:

shutter, *n.* * * * 2. That which shuts out or excludes; specif., a cover, usually hinged, for closing an opening. (1) A frame with blinds or panels, a cover made of boards and battens, or a blind of iron slats, for closing a window-opening. A *shutter* is usually solid, while a *blind* is made with slats, movable or fixed. * * *

While it appears from the foregoing that the words "shutter" and "blind" are defined in terms which refer to each other, we do not believe that it necessarily follows that all shutters are blinds. It would appear that the only shutters which may be considered to be blinds are those used in connection with window openings. The particular tariff designation under consideration is "window blinds," and this implies that the use of an imported article determines its classification thereunder. In other words, it is a designation by use, and, in such cases, it is well settled that it is the chief use of the article which controls its classification. *Magone* v. *Wiederer*, 159 U.S. 555, 40 L. ed. 258.

On the basis of the combined records before us as hereinbefore reviewed, and for all of the reasons hereinabove set forth, we find that the preponderance in weight of the evidence establishes that the wooden shutters, having movable louvers and of a length less than 80 inches, included on the invoices covered by the entries involved herein, are chiefly used in window openings as window blinds, for the control of air, ventilation, and privacy, and, therefore, hold that the said merchandise is properly classifiable under the provision for window blinds, in paragraph 411, as modified, *supra*, and dutiable thereunder at the rate of 40 per centum ad valorem, as assessed by the collector.

The protests are sustained so far as they relate to wooden shutters which have fixed louvers, no matter what their length may be, and wooden shutters, 80 inches in length or height and over, whether they have movable or fixed louvers. In all other respects and as to all other merchandise, the protests are overruled. Judgment will be rendered accordingly.