UNITED STATES *v.* MYERS & Co. (No. 1207).[1]

CEDAR TELEPHONE POLES, PEELED BUT NOT NOTCHED.

The decision setting aside the collector's action was without evidence to support it. These poles were unnotched, but it can not be considered a matter of law that such a pole is an unfinished telephone pole. It is a matter of common knowledge that such poles are used in stringing telephone or telegraph wires.

United States Court of Customs Appeals, October 31, 1913.

APPEAL from Board of United States General Appraisers, Abstract 32584 (T. D. 33511).

[Reversed.]

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel, *Leland N. Wood,* special attorney on the brief), for the United States.

*Brown & Gerry* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

Paragraph 204 of the tariff act of August 5, 1909, provides as follows:

* * * Telephone, trolley, electric light, and telegraph poles of cedar, * * * 10 per cent ad valorem.

Paragraph 712 of the same act gives free entry to "logs and round unmanufactured timber." The question in this case is, Under which of the foregoing paragraphs the merchandise here involved is entitled to entry?

No testimony was taken before the Board of General Appraisers.

In the record we learn by letter from the collector that the merchandise was cedar poles, peeled, 30 feet in length, and was assessed as telegraph poles under paragraph 204. By supplemental report of

---

[1] Reported in T. D. 33857 (25 Treas. Dec., 406).

the collector we are further advised that these poles "were not notched, but simply peeled."

The protest refers to the merchandise as " cedar telephone poles." In the argument in this case it is conceded by importers that these cedar poles " are cut to a length of 30 feet and with a uniform diameter and of a size such as is ordinarily used for telephone and telegraph poles. The merchandise is suitable for use in making telegraph poles, and is, in fact, intended for such use."

We are asked by the Government, the appellant, to reverse the judgment of the Board of General Appraisers sustaining the protest and admitting the merchandise to free entry as " round unmanufactured timber."

The Government also contends that the board committed error in denying its request for a rehearing, but we find it unnecessary to pass upon this question.

The issue here is simple. The merchandise has been classified by the collector as telegraph poles of cedar. That classification was presumptively correct when the case was before the board, and unless this presumption was overcome by evidence or found as matter of law, in view of facts of record or conceded to be erroneous, should have been affirmed. The evidence before the board and upon the strength of which it appears to have reversed the collector is said to be found in the fact that the collector's supplemental report shows the merchandise to have been peeled but not notched. The board relied as a precedent for overruling the collector upon G. A. 6488 (T. D. 27744), where it had held that cedar logs of various lengths and from 10 to 14 inches in diameter used for piling in the construction of railway bridges and trestlework were entitled to free entry. In this Treasury decision other decisions are referred to, among which are United States v. Pierce (147 Fed., 199). This case related to rossed pulp wood in the form of sticks or logs about 10 inches in diameter cut into lengths of about 2 feet, which were by the court given free entry.

We are also referred to Abstract 15899 (T. D. 28278), where the merchandise, which was ash blocks from 6 to 20 inches in diameter cut in lengths of from 2 to 2½ feet, and which were upon inspection found to be so cut for convenience in transportation, was given free entry; also to T. D. 25407, where cedar logs, rough with the bark on, varying in length from 24 to 28 feet, from 12 to 20 inches in diameter at the butt and from 6 to 12 inches at the top, were claimed by the Government to be dutiable as telegraph poles. The record showed that some of the appraiser's reports stated that one-third of them were manifestly unfit for that use, and it appeared that all the merchandise was trimmed only so far as necessary to permit of its being hauled through the woods. It was allowed free entry by the board.

All these decisions were under provisions of prior acts but of similar or like import to the paragraphs now under consideration.

We think all these cases are easily distinguishable upon the facts from the case at bar, but independent of this we think the correctness of the collector's classification was not successfully impeached by any evidence before the board. As we have said, all that related to that subject is to be found in the original and supplemental reports of the collector. Therefore it appears that the poles are 30 feet in length, peeled, but not notched. We are unable to see anything in these facts that tends to show error in the collector's classification sufficient to impeach it.

It is a matter of common knowledge that peeled cedar poles of this length are used for telephone or telegraph poles, and we do not think the fact upon which much stress is laid by the importers' counsel—that they are not notched—is of consequence. We are asked. to say as a matter of law that because a pole is unnotched it is not a finished telephone or telegraph pole. We do not think this can be done. While many of such poles in use are notched, yet the ordinary observer in the rural districts at least sees many in use that are not notched. If commercial designation would exclude such poles from the classification adopted, the importers should have made proof thereof. ·

We think in this case, in view of the record sent up, it must be held that the decision of the board setting aside the collector's action was without evidence to support it, and its judgment is therefore *reversed.*