## UNITED STATES *v.* MacNAUGHTON (No. 1237).[1]

WOOD—ROUND UNMANUFACTURED TIMBER.

These white-oak logs were imported substantially as the tree had fallen when cut down. The branches had been cut off, but the logs had not been peeled or sided. It is doubtful if importations of this character and condition are within the letter or spirit of paragraph 200, tariff act of 1909, and there is nothing in the record so convincing of the contrary as to warrant a reversal. The logs were properly held not dutiable as being the round unmanufactured timber of paragraph 712.

United States Court of Customs Appeals, November 28, 1913.

APPEAL from Board of United States General Appraisers, Abstract 32938 (T. D. 33594).

[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Frank L. Lawrence*, special attorney, on the brief), for the United States.

Submitted on record by appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The determination of this appeal rests upon the construction to be given the testimony in the case, and particularly one statement made

[1] Reported in T. D. 34166 (26 Treas. Dec., 226).

by the importer, who is appellee here, called as a witness in his own behalf. His testimony was brief and is as follows:

J. J. MacNaughton, called as a witness in his own behalf, being duly sworn, testified as follows:

Q. (By Mr. BIRD.) What is your business?—A. Wholesale lumber.

Q. You are the importer of white-oak piles protested against in this case?—A. Yes. * * *

Q. Let us have the facts.—A. They are rough unmanufactured timber; they come in just as they were dropped in the forest.

Q. How long were they?—A. Forty-five feet.

Q. Were they peeled?—A. Fifty feet, I believe.

Q. They were substantially the length they were cut in the forest?—A. Yes.

Q. Were they peeled?—A. No.

Q. Were they sided?—A. No, sir.

Q. Were they just as they were dropped?—A. The branches were cut off.

Q. Otherwise they were in the rough?—A. Yes.

Q. (By Mr. LAWRENCE.) Is this timber ever used for spiles?—A. No, sir.

Q. Ever used in building wharves?—A. No, sir.

Q. I mean similar timber?—A. Yes; at times.

Q. *Common use for it?—A. I would say they were generally used for building wharves.*

By General Appraiser McCLELLAND.) But they were in the rough state?—A. Yes; this timber was used for fender spiles, to protect the boats from knocking against it. They were in the rough state.

The merchandise, which is fully described in the testimony quoted, was rated for duty by the collector of customs at the port of Buffalo under the provisions of paragraph 200 of the tariff act of 1909, providing for "* * * round timber used for spars or in building wharves, * * *."

The importer protested, founding his claim under the provisions of paragraph 712 of the same act, which may be quoted as follows:

Wood: * * * Round unmanufactured timber, * * * all the foregoing not specially provi edf r in this section.

The Board of General Appraisers found "that the merchandise consists of round or unmanfactured timber," reversed the decision of the collector, and sustained the protest. The Government appeals. The appellee makes no appearance in this court other than to submit the case upon the record.

The Government's sole contention is that use determines the dutiable status of this merchandise as properly classifiable under the provisions of said paragraph 200. The argument is based in the main if not entirely upon the testimony of the importing witness, wherein the following colloquy ensued:

Q. Common use for it?—A. I would say they were generally used for building wharves.

This is the only testimony in the record which indicates a use of the particular importation or similar importations for the purposes of building wharves. There is no testimony of a use for spars. Accord-

ingly the decision must be rested upon the force and effect of that part of the testimony quoted.

Inasmuch as the statute, paragraph 200, makes use the determining factor of all merchandise included therewithin for dutiable purposes, the unquestionable rule of law in the case, if it should appear that the imported merchandise was chiefly used either for spars or for building wharves, would make it properly classifiable for duty under the provisions of paragraph 200. That principle has been so often enunciated it seems trite to argue the question. Vandiver v. United States (1 Ct. Cust. Appls., 194; T. D. 31219); United States v. Hempstead & Son (3 Ct. Cust. Appls., 436; T. D. 33004); Hartranft v. Langfeld (125 U. S., 128); Magone v. Wiederer (159 U. S., 555).

Does the testimony in this record establish that the chief use of such timbers as these is for the construction of wharves? There is neither evidence nor contention in the record that it is chiefly used for spars. We do not think that the language of the witness fairly considered is of that import which would warrant the assessment of duty provided by paragraph 200. The question was, first, was this timber "ever used in building wharves?" and the answer was "No." Here the witness evidently referred to the identical timber. The next question was, "I mean similar timber," to which he frankly answered, "Yes; at times." Then counsel for the Government asked the question, if this was a "*common* use for it?" to which he answered, "I would say they were *generally* used for building wharves."

Both the definitions of the words "common" and "generally" and the language as used is susceptible of two interpretations. A thing may be generally used for a certain purpose where that use is simply a common one or one not uncommon or unfamiliar, but which, nevertheless, does not constitute its chief use. In that sense the word "generally" is coextensive with the word "common," and the fact that the witness used the word "generally" in response to a question addressed to "common" use indicates that the witness understood the terms coextensive and his answer in that sense. He may have meant, and probably did mean, to respond that such was a common— that is, not uncommon—use for such timber. It is a common use, indeed a general use, for bricks in building fireplaces, but it is not their chief use. It is a common use for plate glass to cover desks, but is not the chief use of plate glass. It is a common use for bolts in the building of wharves, but not their chief use. In this sense "common" and "generally" bespeak only a use which is not infrequent and which is common to everyday observation, but which, nevertheless, may not be the chief use of such an article. So that, as is indicated by the context, we can not say that the witness intended to or did testify that the use of such timber for making wharves was other than a matter of frequency, or not uncommon. It is certainly a very

dubious and fragmentary bit of evidence upon which to reverse a decision of the Board of General Appraisers and predicate a finding that the timber with which wharves in this country are constructed is chiefly of the class represented by this importation.

The learned general appraisers seem to have rested their decision in a great measure upon the fact that these logs were not peeled, but as they fell from the tree. In the absence of an established commercial usage, it was permissible for them, and they probably did indulge a common knowledge that such timbers are not usually used for spars or in the building of wharves in their imported condition, but rather are ordinarily further processed by barking at least. It is doubtful if importations of this character and condition are within the letter or spirit of paragraph 200, which, in other particulars at least, speaks only of timbers of considerable processing other than the mere felling in the forest. We can find nothing in the record so convincing of the contrary as to warrant reversal of the decision of the board. United States *v.* Myers & Co. (4 Ct. Cust. Appls., 431; T. D. 33857); United States *v.* Pierce (147 Fed., 199).

*Affirmed.*