(C.D. 2855)

BALFOUR, GUTHRIE & Co., LTD.
FRANK P. DOW CO., INC. } v. UNITED STATES

United States Customs Court, Second Division

(Decided December 19, 1966)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.

*Barefoot Sanders*, Assistant Attorney General (*S. William Barr* and *Charles P. Deem*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: Presented for the court's determination in the instant case is the proper classification for customs duty purposes of certain galvanized box binding wire and galvanized stapling wire. Upon entry at the port of Portland, Oreg., the merchandise was classified as galvanized iron or steel wire, valued over 6 cents per pound, in paragraph 316(a) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and duty was imposed thereon at the rate of 8½ per centum ad valorem, plus ⅒ of a cent per pound, pursuant to paragraph 316(a) of said act, as modified by the Annecy protocol to said general agreement, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462, by virtue of the fact that the merchandise was galvanized.

By a timely filed protest, plaintiffs contend that said merchandise should properly have been classified as wire, commonly used for baling commodities other than hay in paragraph 317 of said tariff act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, for which duty at the rate of ¼ of a cent per pound is provided. An alternative claim was made for classification of the imported wire as agricultural implements of any kind or description in paragraph 1604 of the Tariff Act of 1930, which articles are granted entry free of customs duty. However, said alternative claim was specifically abandoned when the case was called for hearing and will, accordingly, be dismissed.

The competing provisions of the tariff act are here set forth.

Paragraph 316(a) of the Tariff Act of 1930, as modified by the sixth protocol, *supra:*

Round iron or steel wire:
    Valued not over 6 cents per pound:

   \*      \*      \*      \*      \*      \*      \*

    Valued over 6 cents per pound_____8½% ad val.

Paragraph 316(a) of said tariff act, as modified by the Annecy protocol, *supra*:

All wire of iron, steel, or other metal (except round
  iron or steel wire valued not above 6 cents per
  pound) coated by dipping, galvanizing, sherar-
  dizing, electrolytic, or any other process with
  zinc, tin, or other metal_____ $\frac{1}{10}$¢ per lb in ad-
                                                dition to the
                                                rate imposed
                                                on the wire of
                                                which it is
                                                made

Paragraph 317 of said act, as modified by the General Agreement on Tariffs and Trade, *supra:*

\* \* \* all wire commonly used for
  baling hay or other commodities_____ $\frac{1}{4}$¢ per lb.

In support of their claim for classification of the merchandise at bar as wire, commonly used for baling commodities other than hay, plaintiffs called two witnesses to testify in their behalf. The first was Charles H. Potts who, for the last 9 years, has been district manager of the industrial department of Balfour, Guthrie & Co., Ltd., the importer of record. His duties, among other things, included the importation of various kinds of wire such as box binding and stapling wire, baler wire, field and fence barbed wire, and other types of wire. He identified certain pieces of wire shown to him as medium box binding wire of 14, 15, and 16 gauge as representative of the box binding wire in issue. Said pieces of wire were received in evidence as plaintiffs' collective exhibit 1. He also identified a sample of half hard box stapling wire, 16 gauge, as representing the stapling wire in controversy, which sample was received in evidence as plaintiffs' exhibit 2.

Potts testified that he had sold such box binding and stapling wire to the Western Wirebound Box Co., for 9 years and that the merchandise has to conform to package container requirements to withstand breaking strain.

Plaintiffs' second witness was William Walter Oliver who stated that he is superintendent of the Western Wirebound Box Co. and that he has held this position for 19 years. Western Wirebound Box Co. is a manufacturer of wirebound boxes. As part of his duties, Oliver supervises the purchase of wire and the manufacture and sale of boxes manufactured by his company. He testified to his familiarity with plaintiffs' collective exhibit 1 and with exhibit 2, stating that these are the types of wire used by his company. Wirebound boxes are used to transport potatoes, celery, peaches, corn, poultry, and for several industrial uses. Oliver testified to his personal observation of

these uses from Maine to Florida and from Florida to the West Coast. In addition to sales by the Western Wirebound Box Co. to purchasers in California, the largest users of wirebound boxes, sales are also made by his company to customers in the Pacific North, Washington, Idaho, Nevada, and Arizona.

Oliver identified a box in a knocked-down condition made by the Western Wirebound Box Co. and said box was received in evidence as plaintiffs' exhibit 3. He also identified an article manufactured by his company for sale to the United States Government for the exportation of potatoes for military use. Said crate or box was received in evidence as plaintiffs' exhibit 4.

In describing the method of manufacture of boxes produced by the Western Wirebound Box Co., Witness Oliver stated that veneer obtained by cutting logs on a back-roll lathe is cut into slats which are placed on top of wooden cleats in a machine which forms unassembled boxes. Box binding wire drawn across the slats is stapled to the slats, and the slats to the cleats, by means of box stapling wire. Thereupon two box ends are inserted and the boxes in a flat, unformed condition are tied together in bundles of 10. The witness stated that, after the crates or boxes are delivered to a buyer, they are assembled either by hand as in the past, or nowadays mostly by machine.

Plaintiffs' exhibit 3, which bears indications it was made to contain corn, measures approximately 26 by 13½ by 7½ inches, whereas plaintiffs' exhibit 4, manufactured for use in the shipment of potatoes, in an assembled condition, measures approximately 28 by 12 by 12 inches.

Received in evidence as plaintiffs' collective exhibit 5 were two brochures which illustrate a machine used for closing wirebound boxes and crates after being filled with produce, and the method of packing celery in wirebound crates. Although the crates or boxes represented by exhibits 3 and 4 may be closed by hand, most of the large fruit and vegetable growers use machines to close the containers to insure holding all the contents securely in place.

It was the testimony of Witness Oliver that he does not know of any other use for wire such as that in issue than in the manufacture of wirebound boxes and that he had never bought any other type of wire for that purpose. He added that his knowledge, in this regard, covered a period of 30 years.

Oliver also stated that he considered an article like plaintiffs' exhibit 3 or 4 to be a box or a crate and not a bale.

As defendant's exhibit A, pages 41 and 42 of a publication put out by "The American Iron and Steel Institute" entitled "Steel Products Manual" "Wire and Rods, Carbon Steel" were received in evidence, the pertinent portions of said pages being circled in red ink. Said

printed excerpts set forth the specifications for box binding wire and box stapling wire.

Towards the conclusion of the hearing of this case counsel for the respective parties entered into a stipulation to the following effect:

1. That the box binding wire and stapling wire in issue is wire such as is described in defendant's exhibit A, and

2. That the wire in issue was made to rigid specifications and that it is solely used in the manufacture of wirebound boxes.

In support of their claimed classification, plaintiffs rely solely on the case of *Holdwire, Ltd.* v. *United States*, 49 Cust. Ct. 19, C.D. 2355. In that case, this court held that steel tying wire of 18½ gauge, used in a wire-tying machine for bundling commodities such as newspapers, magazines, and other printed matter, was wire commonly used for baling other commodities than hay within the purview of paragraph 317 of the Tariff Act of 1930, as modified. In arriving at its decision, the court considered the common meaning of the word "bale" as set forth in Webster's New International Dictionary of the English Language, second edition, 1951, reading—

1. A large bundle or package of goods for storage or transportation; now, specif., a large closely pressed package of merchandise bound with cord, wire, or hoops, and usually protected by a wrapping, as of burlap. * * *

Plaintiffs contend by analogous reasoning that wire used to hold slats of a crate around tightly pressed together vegetables or other commodities inside such crates is likewise within the paragraph 317 provision for "wire commonly used for baling hay or other commodities."

The court in the *Holdwire* case, *supra*, in considering the expression "commonly used" contained in paragraph 317 of the tariff act, stated—

* * *, in view of the statutory language "commonly used," the burden of the plaintiff was not so great as that assumed by a party having to establish chief use. "The fact of chief use is difficult to prove. It ordinarily entails rather exacting evidence of use throughout the United States and cannot depend upon evidence of use locally." *L. Tobert Co., Inc., and American Shipping Co.* v. *United States*, 28 Cust. Ct. 456, Abstract 56581, affirmed, 41 C.C.P.A. (Customs) 161, C.A.D. 544. Common use implies "only a use which is not infrequent and which is common to everyday observation, but which, nevertheless, may not be the chief use of such an article." *United States* v. *MacNaughton*, 5 Ct. Cust. Appls. 114, T.D. 34166.

However, there is nothing contained in the present record to support a holding that the wire in issue is commonly used for baling. From the testimony of the witnesses in the case before the court, who ap-

peared on behalf of plaintiffs, and from the facts agreed upon by counsel for the adversary parties, as well as from a visual examination of plaintiffs' exhibits 3 and 4, received in evidence, it appears that the wire in issue consists of box binding wire and box stapling wire; that it is only used for the manufacture of wirebound boxes; and that packaging by boxing or crating is not considered to be baling.

It is interesting to note the following definitions of "box" and "crate" as they appear in Webster's New International Dictionary of the English language, second edition, 1957—

box, n. 1. a   Typically, a receptacle with four sides, a bottom, and a cover, made of any of various materials, as wood, cardboard, steel, etc.; * * *

crate, n.   * * * 2.   A container, as for fruits and vegetables, in which the members of the side faces are spaced to provide ventilation.

In the *Holdwire* case, *supra*, reference was made to *F. F. G. Harper Co.* v. *United States*, 67 Treas. Dec. 893, T.D. 47729, which similarly held that galvanized steel wire used in baling machines for baling paper, rags, and other commodities was encompassed by the provision for "all wire commonly used for baling hay or other commodities" in paragraph 317 of the Tariff Act of 1930.

In the case at bar, however, the merchandise in issue is not used in a baling machine for baling purposes but in a box manufacturing machine for the production of boxes or crates.

Since neither the testimonial record, common meaning, common knowledge, nor prior judicial construction of the claimed statutory provision lends support to a conclusion that the box binding and box stapling wire at bar, admittedly made to definite specifications solely for use in the manufacture of boxes or crates for the packaging and transportation of fruits, vegetables, and some industrial products, is wire used commonly for baling commodities other than hay, as claimed, the court holds that the plaintiffs herein have failed in their dual burden of proving not only error on the part of the collector in classifying the instant merchandise, but also the correctness of their claim. *Bob Stone Cordage Co., et al* v. *United States*, 51 CCPA 60, C.A.D. 838. In the circumstances, therefore, the claim for classification of the importation as wire commonly used for baling commodities other than hay within the provisions of paragraph 317 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, is overruled.

Judgment will be entered accordingly.