**The CARBORUNDUM COMPANY**
**v.**
**UNITED STATES.**
C.D. 4584; Court No. 72–6–01324.

United States Customs Court.
Feb. 10, 1975.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz, New York City, of counsel), for plaintiff.

Carla A. Hills, Asst. Atty. Gen. (Herbert P. Larsen, New York City, trial atty.), for defendant.

LANDIS, Judge:

This action concerns the customs classification, at Buffalo, N.Y., of a product imported from Canada on August 6, 1969, described on the commercial invoice as abrasive furnace ferrosilicon.

Customs officials classified the product as an alloy of iron or steel powder, other than stainless steel powder, dutiable at 15 per centum ad valorem under item 608.08 of the Tariff Schedules of the United States (TSUS).

Plaintiff complains that the customs classification is incorrect and that the product instead is properly classifiable as ferrosilicon containing over 8 percent but not over 60 percent by weight of sil-

icon (not over 30 percent manganese), dutiable under TSUS item 607.50 at 0.4 cent per pound on the silicon content. The appropriate schedule 6, part 2, subpart B headnote, and pertinent items thereunder are as follows:

## SCHEDULE 6.—METALS AND METAL PRODUCTS

Part 2.—Metals, Their Alloys, and Their Basic Shapes and Forms

### Subpart B.—Iron or Steel

*Subpart B headnotes*:

1. This subpart covers iron and steel, their alloys, and their so-called basic shapes and forms, and in addition covers iron or steel waste and scrap.

2. *Grades of Iron, Steel, and Ferroalloys.*— For the purposes of the tariff schedules, the following terms have the meanings hereby assigned to them:

* * * * * * * *

(e) *Ferroalloys*: Alloys of iron (except spiegeleisen and ferronickel, as defined in headnotes 2(c) and 2(d), supra, respectively) which are not usefully malleable and are commonly used as raw material in the manufacture of ferrous metals and which contain one or more of the following elements in the quantity, by weight, respectively indicated:

> over 30 percent of manganese, or
> over 8 percent of silicon, or
> over 30 percent of chromium, or
> over 40 percent of tungsten, or
> a total of over 10 percent of other alloy elements, except copper, and

which, if containing silicon, do not contain over 96 percent of nonferrous alloy elements, or, if containing manganese but no silicon, do not contain over 92 percent of nonferrous alloy elements, or, if containing no manganese and no silicon, do not contain over 90 percent of nonferrous alloy elements. For the purposes of this subpart—

> (i) *ferrochromium* is a ferroalloy which contains, by weight, over 30 percent of chromium but not over 10 percent of silicon;
> (ii) *ferromanganese* is a ferroalloy which contains, by weight, over 30 percent of manganese but not over 10 percent of silicon;
> (iii) *ferromolybdenum* is a ferroalloy which contains, by weight, over 50 percent of molybdenum;

(iv) *ferrophosphorus* is a ferroalloy which contains, by weight, over 15 percent of phosphorus;

(v) *ferrosilicon* is a ferroalloy which contains, by weight, not over 30 percent of manganese and over 8 percent of silicon:

\* \* \* 1

\* \* \* \* \* \* \* \*

Ferroalloys:

\* \* \* \* \* \* \* \*

Ferrosilicon:

| | | |
|---|---|---|
| 607.50 | Containing over 8 percent but not over 60 percent by weight of silicon .......... | 0.4¢ per lb. on silicon content |
| 607.51 | Containing over 60 percent but not over 80 percent by weight of silicon ........... | \* \* \* |
| 607.52 | Containing over 80 percent but not over 90 percent by weight of silicon ......... | \* \* \* |
| 607.53 | Containing over 90 percent by weight of silicon ........................... | \* \* \* |

\* \* \* \* \* \* \*

Sponge iron; iron or steel powders:

Sponge iron, including powders thereof:

\* \* \* \* \* \* \* \*

Other powders:

| | | |
|---|---|---|
| 608.05 | Other than alloy iron or steel ............ | \* \* \* |
| | Alloy iron or steel: | |
| 608.06 | Stainless steel powders ............... | \* \* \* |
| 608.08 | Other ............................ | 15% ad val. |

——◆——

The issue in this case clearly appears from the Government attorney's opening statement, in substance as follows:

The invoice shows the merchandise to be ferrosilicon and the witnesses for the plaintiff and the defendant refer to the merchandise as ferrosilicon but it is the Government's contention that nevertheless the merchandise is not ferrosilicon (under the main superior heading for ferroalloys) as defined in headnote 2(e) to schedule 6, part 2B of the tariff schedules. Ferroalloys are there defined as "alloys of iron which \* \* \* are commonly used as raw material in the manufacture of ferrous metals," but the Government will show the merchandise is of a particular class and grade of iron alloy not commonly used as a raw material in the manufacture of ferrous metals.[2] The facts relevant to the argument of that issue are not in dispute and can be stated briefly.

1. There follow similar statements with respect to ferrosilicon chromium, ferrosilicon manganese, ferrosilicon titanium, ferrosilicon tungsten, ferrotitanium, ferrotungsten, ferrovanadium, and ferrozirconium.

2. The relative specificity of items 607.50 and 608.08 is not in dispute. Defendant's pleading admits plaintiff's allegation that item 607.50 is more specific than item 608.08.

The imported ferrosilicon (exhibit 1)[3] contains 16.33 percent silicon and not over 30 percent of manganese, by weight. It is provenly ferrosilicon albeit a special type pulverized to the condition of powder[4] for use in the sink-float or heavy-media process that separates two materials of different specific gravities. That process is used at iron mines to separate iron ore from gangue, by scrap processors, and by the trade in rock or stone aggregate for road construction.

Plaintiff's witness, Mr. Jackson, was of the opinion that since the heavy-media process of separating iron ore from gangue is a step necessary to prepare the iron for melting in the furnace, the use of powder ferrosilicon in the process was as a raw material in the manufacture of ferrous metals. He admitted that powder ferrosilicon was not added to the blast furnace as a raw material.

Defendant's witness Fairchild (employed by the Foote Mineral Company) stated that his company's competing pulverized silvery pig iron represented by exhibit A (R. 135), while the chemical analysis is not identical, is a heavy-media ferrosilicon competitive with the imported product represented by exhibit 1 (R. 133). Mr. Fairchild testified that exhibit A is a ferroalloy (R. 147–162), because the chemical analysis of the material is approximately fifteen and one-half percent silicon, possibly one percent manganese, about eight-tenths of carbon and less than one percent of other trace elements. Mr. Fairchild was of the opinion that powder ferrosilicon was not suitable for use as a raw material in the manufacture of ferrous metals but replied, when next asked on defendant's direct examination, as follows:

Q. Then, in terms of the definition of ferroalloy which you agreed to be-fore [raw material used in the manufacture of ferrous metals] is Defendant's Exhibit A, in its present condition, in powder form, such a ferroalloy?

\* \* \* \* \* \*

THE WITNESS: Well, it would appear that the two definitions are mutually incompatible. The definition of ferroalloy doesn't identify the physical nature of the ferroalloy. It indicates, possibly, somewhat the chemical nature, iron plus an alloying element, but it doesn't indicate whether the material is in lump or powder form. I think the definition of ferroalloy is very general and it is not specific as to the physical form of the material. [R. 164–165.]

Defendant's witnesses were of the opinion that the heavy-media separation was not a step in the manufacture of ferrous metals which, in their opinion, starts with the reduction of ores in the blast furnace.

Defendant's witness, Mr. Joynt, chief metallurgist at Republic Steel, Buffalo, N.Y., testified that powder ferrosilicon is too fine to be used in the manufacture of ferrous metals but he stated that his company had used powder ferrosilicon, made into briquets, as a raw material in the manufacture of ferrous metals. (R. 116.) All witnesses, so asked, agreed that ferrosilicon, without regard to form or condition, is a class or kind of product chiefly used as a raw material in the manufacture of ferrous metals.

The dispute in this case, quite obviously, is bottomed on the form and condition of the imported ferrosilicon and its use in that form and condition, namely, powder. Plaintiff argues that the form and condition does not control the classification of ferrosilicon because

---

3. Various other exhibits in evidence will be referred to only to the extent deemed relevant.

4. Much of the trial testimony is devoted to the question of whether the imported prod-uct is in the form of powder. Since plaintiff does not argue that it is not powder, I assume that the form or condition of the product as powder is not in dispute.

it is a classification of a class or kind of ferroalloy and, irrespective of its form or condition and use in that form or condition, ferrosilicon is a class or kind of ferroalloy commonly used as a raw material in the manufacture of ferrous metals. In an additional point, plaintiff contends that the heavy-media process of separating iron ore from gangue is a process in the manufacture of ferrous metals, and that powder ferrosilicon commonly used in the separation process of iron ore from gangue, is a raw material in the manufacture of ferrous metals within the meaning and intent of the statutory headnotes relevant to the classification of ferroalloys and ferrosilicon. Defendant agrees that the term "ferroalloys" is intended to classify a class or kind of product that includes ferrosilicon. Defendant takes the position, however, that powder ferrosilicon used in the heavy-media process of separating iron ore from gangue is not ferrosilicon of the class or kind that is a ferroalloy for the reason that its use in the heavy-media process is not as a raw material in the manufacture of ferrous metals.[5] Plaintiff, in reply, alludes to the proof that the imported powder ferrosilicon contains over 8 percent but not over 60 percent, by weight, of ferrosilicon. That proof says plaintiff *ipso facto* establishes that it is a ferroalloy, presumedly under the relevant statutory headnote which states that for the purposes of subpart B, in which ferrosilicon is classified, "ferrosilicon is a ferroalloy which contains, by weight, not over 30 percent of manganese and over 8 percent of silicon."

▆▆▆▆ I hold the imported abrasive furnace ferrosilicon properly dutiable as ferrosilicon under TSUS item 607.50 for two reasons, to wit:

Firstly, the statutory headnote definitively states that ferrosilicon is a ferroalloy which contains by weight, not over 30 percent of manganese and over 8 percent of silicon. Defendant's pleading admits that the imported ferrosilicon meets those weight specifications.

Secondly, even assuming as defendant contends, the definition of the term "ferroalloys," viz.: "alloys of iron * * * commonly used as raw material in the manufacture of ferrous metals" is determinative of the issue in this case, then under the evidence the imported ferrosilicon is ferrosilicon which is a class or kind of iron alloy that is commonly used as a raw material in the manufacture of ferrous metals. The weight of the evidence establishes that without regard to its form or condition, the imported ferrosilicon is, *eo nomine*, ferrosilicon which as a class or kind is chiefly and, therefore, commonly used as a raw material in the manufacture of ferrous metals.

As to my first reason, *supra*, for sustaining plaintiff's claimed classification under TSUS item 607.50, I note that defendant, contending that ferrosilicon in powder form is not a ferroalloy, relies entirely on the headnote definition that states that ferroalloys are alloys of iron, *inter alia*, commonly used as raw material in the manufacture of ferrous metals. To accept defendant's argument that the imported ferrosilicon is not commonly used as a raw material in the manufacture of ferrous metals and, therefore, not a ferroalloy, one must conclude that the superior heading "ferroalloys" is narrower than the inferior heading "ferrosilicon." That conclusion is, however, patently at variance with TSUS General Interpretative Rule 10(c)(i) which states that "a superior heading cannot be enlarged by inferior headings indented under it but can be limited thereby." The conclusion is also clearly inapposite to what Congress was told in connection with the TSUS classification of "ferroalloys" and "ferrosilicon" namely, that "[s]urely, there is something amiss if the existing provisions [1930 Tariff Act] require that the generic word 'alloy' have a meaning more limited than a specific designation for a common fer-

---

5. Defendant's answer admits that the imported ferrosilicon meets the requirement that it not be usefully malleable.

roalloy known as 'ferrosilicon'." (Tariff Classification Study, Schedule 6, Part 2, page 87.)

Defendant's argument further assumes that the meaning assigned to the term "ferroalloys" in TSUS is all there is to the context of the headnote. But the context of the headnote does more than just assign a meaning to the term "ferroalloys." It is a well known judicial principle that statutes must be read and understood in their entire context. What defendant has significantly ignored or avoided discussing is the complete text of the headnote where Congress, after assigning a meaning to the term "ferroalloys," goes on to further state that for the purposes of the subpart (referring to the term "ferroalloys" and classifying the common ferroalloys) "ferrosilicon is a ferroalloy which contains, by weight, not over 30 percent of manganese and over 8 percent of silicon." That, in my opinion, is a positive, straight-forward and unambiguous statement that, within those weight specifications, ferrosilicon is a ferroalloy. Cf. C. J. Tower & Sons of Buffalo, Inc. v. United States, 56 Cust.Ct. 152, 162, C.D. 2623 (1966). If the TSUS statement was less positive or was not set forth in the headnote on ferroalloys, the classification of ferrosilicon would be uncertain and in every case subject to proof that ferrosilicon was commonly used as a raw material in the manufacture of ferrous metals. The proposition that Congress did not intend to leave it open to be decided whether ferrosilicon in each case was used as a raw material in the manufacture of ferrous metals, but set its own determinant by providing simply that ferrosilicon is a ferroalloy which contains, by weight, not over 30 percent of manganese and over 8 percent of silicon is, moreover, not new in the judicial classification of alloys. United States v. Gulf Oil Corporation et al., 47 CCPA 32, 41, C.A.D. 725 (1959) (alloy steel); C. J. Tower & Sons v. United States, 41 CCPA 195, C.A.D. 550 (1954) (alloy aluminum silicon); American Import Co. v. United States, 26 CCPA 116, C.A.D. 3 (1938) (alloy of copper); United States v. Baltimore & Ohio R. R. Co., 16 Ct.Cust.Appls. 180, 185, T.D. 42810 (1928) (non-manganese alloy).

Getting on to my second reason, *supra;* for sustaining plaintiff's claimed classification under TSUS item 607.50, appropos defendant's basic argument, it is in my opinion completely illogical to admit that ferrosilicon is a class or kind of ferroalloy, as defendant does, and then go on to argue that the imported ferrosilicon is not that class or kind of ferrosilicon which is a ferroalloy.[6] If Congress intended ferrosilicon in powder form[7] to be classified differently from the *eo nomine* class of ferrosilicon, it seems strange that it did not do so in the clear fashion by which it excepted "spiegeleisen and ferronickel" from the meaning assigned the term "ferroalloys."[8]

This action claiming classification of the imported ferrosilicon under TSUS item 607.50 is, accordingly, sustained. Judgment will so enter.

---

6. The phrase "commonly used" is classic tariff language intended to classify a class or kind of product. Cf. Meyers & Co. v. United States, 10 Ct.Cust.Appls. 216, 218, T.D. 38557 (1920); Holdwire, Ltd. v. United States, 49 Cust.Ct. 19, C.D. 2355 (1962); United States v. Astra Bentwood Furniture Co., 25 CCPA 340, 345, T.D. 49434 (1938).

7. Compare, TSUS definition of "ferroalloys" with the not substantially different Brussels Nomenclature heading 73.02 definition of ferroalloys that includes "ferroalloys * * * in the form of ingots, blocks, lumps, pieces,

granules or *powder.*" [Emphasis added.] The Brussels Nomenclature " * * * [which] exerted the greatest influence on the arrangement of the proposed revised schedules" (Tariff Classification Study, Submitting Report, page 8) is persuasive that the TSUS term "ferroalloys" includes powder. Cf. Schwarz v. United States, 57 CCPA 19, 22, C.A.D. 971 (1969).

8. For explanation excepting ferronickel from the definition of "ferroalloys" see, Tariff Classification Study, Schedule 6, Part 2, page 91.